M. M. SMITH v. CYRUS THOMPSON, Secretary of State, et al.

(Decided March 8, 1898 )

*Secretary of State—Supreme Court Reports, Contracts for Sale of, on Commission—Invalid Contract.*

The Secretary of State, to whom Section 3635 of *The Code*, commits the sale of the Supreme Court Reports on a commission of five per cent., upon the amount of such sales, and who is authorized by Section 5, chapter 473, Acts of 1889, to allow a reasonable discount to booksellers in the State, has no authority to contract with a firm of booksellers whereby all the Reports are to be delivered to them for sale at a commission of $12\frac{1}{2}$ per cent, even though, by such contract, the Secretary of State would be relieved of the distribu-

tion of the Reports, directed in Section 3635 of *The Code*, and the State would be saved the expense of the rental of storage rooms for all the unsold Reports on hand.

CIVIL ACTION brought by plaintiff against the defendant Thompson, as Secretary of State, and A. Williams & Co. to vacate and declare void a certain contract, and for a mandamus to compel said Thompson, as Secretary of State, to furnish to the plaintiff certain Supreme Court Reports and for an injunction, heard before *Robinson, J.,* at July Term, 1897, of WAKE Superior Court on a motion to dissolve a restraining power theretofore issued. The motion of the action and the ground upon which the injunctions were sought appear in the opinion.

*Messrs. Douglas & Holding* for the plaintiff (appellant).

*Messrs. MacRae & Day* and *Jones & Boykin* for defendants.

MONTGOMERY, J.: The defendant Thompson, as Secretary of State of North Carolina, entered into a contract with the other defendants, A. Williams & Co., by which all of the Supreme Court Reports, then in possession of Thompson, as Secretary of State, and all such thereafter to be published, were to be placed in the possession of Williams & Co., to be held by them as the property of the State and be sold by them for the benefit of the State. Monthly returns of the sales were to be reported to the Secretary of State, and payment made to that office at the end of each month for such of the Reports as had been sold during the month, Williams & Co. reserving out of the proceeds of sale a commission of 12½ per cent. as compensation for selling and

storing, and for taking care of the books. Williams & Co. were to divide the commissions equally between themselves and regular book sellers in North Carolina, who might purchase from them as discount upon the prices charged other purchasers. There was another provision in the contract by which it was stipulated that Williams & Co. were to superintend the distribution of the books under the direction of the Secretary of State, and for such service they were to charge only the actual cost of the material used in wrapping the books for shipment and the actual amounts paid for express charges and postage. The contract was determinable by either party upon ___ days notice, and upon such determination all of the books remaining unsold and not accounted for were to be turned over to the Secretary of State. Under the contract all of the Reports belonging to the State (19,000, according to the sworn statement of the Secretary,) were delivered to Williams & Co.

The defendant Thompson gave as a reason for making the contract "That affiant found the Reports badly stored in an old warehouse in Raleigh at a rental of $30 per month, and in danger of injury by reason of their exposed and neglected condition; indeed, that some of them had already been injured, this affiant being unable, because of his other duties as Secretary of State, to give personal attention to the care, preservation and disposal of the Reports, in order to have them properly stored, arranged and cared for in a safe and convenient place. As compensation for the services to be rendered by Williams & Co., as above set forth, the allowance of 12½ per cent. was agreed upon, said commissions to be divided as hereinbefore stated with regular book sellers in this State purchasing said books; that by said ar-

rangement there is saved to the State the storage charges of $360 per year, the books are better cared for, protected and preserved, and are subject to any order which may be made by this Court; affiant is further informed and believes that Williams & Co. are entirely reliable and proper persons to act as his agents as aforesaid, and that a substantially similar agreement or arrangement as that just made was heretofore in effect between former Secretaries of State and the old firm of Alfred Williams & Co. (which firm went into liquidation) and affiant has made now a similar arrangement with Williams & Co., their successors; affiant denies that said arrangment created any monopoly, but simply employs said firm to act for affiant in the custody and disposition of said books."

In the argument here it was insisted by the counsel of the defendants that the contract appeared, from the affidavits filed in the cause, to have been executed in good faith and was greatly for the benefit and advantage of the State. This may be taken as true and the reasons assigned by Thompson for entering into the contract may be admitted to be good ones, but they are not the questions brought up by the appeal for our decision. The question presented for our consideration is, whether or not the contract was one which the defendant Thompson had the right under the law to make.

Section 3635 of *The Code* provides that the Supreme Court Reports shall be distributed to certain officers and institutions, named therein, by the Secretary of State, and sold at the price of $2.00 per volume, and that the Secretary shall pay to the Treasurer monthly the monies arising from such sales, less 5 per cent. which he may retain for his services. Section 5 of Chapter 473 of the Laws of 1889 authorizes the Secretary to allow to regu-

lar book sellers in this State such discount as to him may seem reasonable and just from the prices fixed by law. The Secretary derives his power .to dispose of the Reports from the provisions of the law above referred to. He is the public officer designated by the law to make sale of the books, and his compensation for such service is fixed by the law at 5 per cent. on the amount of sales—he being required to distribute the books to those named in Section 3635 without extra compensation, but of course without expense to him. If the Secretary shall appoint an agent to sell these books, which he clearly would have a right to do, the agency to be revoked at his pleasure, he could not allow out of the proceeds of sale a greater compensation to the agent than the law allows him for such service. It is perfectly clear, too, that the law contemplates that the sale of the Reports shall be made for the cash money. "He shall pay to the Treasurer monthly the monies arising from said sales, less 5 per cent., which he may retain for his services" is the explicit language of the law.

Now, if these principles be applied to the facts in the case, it will be seen that the contract between Thompson, the Secretary of State, and A. Williams & Co. was made without authority of law. There has been no sale. The books are still the property of the State in the hands of the agent of the defendant Thompson under a contract by which Williams & Co. are to receive and are receiving, as they sell them, $12\frac{1}{2}$ per cent. commissions on the sales, whereas the law allows Thompson himself only 5 per cent. for such sales if made by him.

The statute, the Act of 1889, Chapter 473, Section 5, authorizes the Secretary to allow book sellers in this State such discount as to him may seem reasonable and just on sales made to them, but the contract in this case

is not a sale in any sense of the word. The discount is to be upon sales and must be the same as to all book sellers.

It may be proper to add that, if the State does not own a building suitable for the storage of these books, then, certainly a proper place must be secured for that purpose, and, upon the necessity for such an expense being made to appear to the proper authorities, an appropriation out of the public funds will doubtless be made to meet that extreme.

There was error in the ruling of the Court below dissolving the restraining order theretofore made in the cause, and the same is reversed.

Reversed.